## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
                                        )
CLAUDIA ADAMS,                          )
                                        )
                    Plaintiff           )
                                        )
            v.                          )          Docket No:_____
                                        )
                                        )          **JURY TRIAL**
                                        )          **DEMANDED**
BY DESIGN L.L.C.; JAY LEE; and          )
RUSSELL KEMP,                           )
                                        )
                                        )
                    Defendants          )
_____)


## <u>COMPLAINT AND JURY DEMAND</u>

## <u>PARTIES</u>

1.      The plaintiff, Claudia Adams ("Ms. Adams" or "Plaintiff"), is a female resident of the State of New York residing at 300 Hendrick Avenue, Glen Cove, NY 11542 .

2.      Defendant By Design L.L.C. (the "Company") is a limited liability company with its principal office located at 463 7th Avenue, Suite 200, New York, NY 10018.

3.      Defendant Jay Lee ("Lee") is an adult male, and, upon information and belief, resides in New York. At all relevant times, Lee was the CEO and co-owner of the Company. Lee is named in both his individual and official capacities.

4.      Defendant Russell Kemp ("Kemp") is an adult male, and, upon information and belief, resides in New York. At all relevant times, Kemp was the President and co-owner of the Company. Kemp is named in both his individual and official capacities.

## JURISDICTION AND VENUE

5.     The court has subject matter jurisdiction under 28 U.S.C. § 1331 because the

Plaintiff has brought federal claims, including claims under Title VII, 42 U.S.C. § 2000e-2, et al.,

and the Americans with Disability Act ("ADA") 42 U.S.C. §§ 1201 *et seq.*. The court may

exercise supplemental jurisdiction over Ms. Adams' state and city law claims. 28 U.S.C. § 1367.

6.     Venue is appropriate in the United States District Court for the Southern District

of New York, as the acts or omissions giving rise to the claims in this Complaint occurred in

Southern District of New York.

7.     This court has personal jurisdiction over Defendants Lee and Kemp because they

are residents of the State of New York. Additionally, Lee and Kemp have numerous contacts and

connections with and within the State of New York.  For example, Kemp and Lee own a

Company that operated in New York, worked for the Company in New York, supervised Ms.

Adams in the state of New York and terminated Ms. Adams in New York.

8.     The court has personal jurisdiction over the Company because it is a resident of

the state of New York because its principal place of business is in New York and it is

incorporated in New York. Additionally, the court has personal jurisdiction over the Company

because it engaged in and transacted business in the State of New York, including by managing

and/or operating a business in the State of New York (located at 463 7th Avenue, Suite 200, New

York, NY 10018), and/or by employing Ms. Adams in the State of New York, and Ms. Adams'

causes of action stem largely from the Company's business transactions within the State of New

York. Indeed, Ms. Adams was employed by the Company in New York, Ms. Adams worked in

the State of New York, and Ms. Adams was managed and terminated by the Company in the

State of New York.

## STATEMENT OF FACTS

9.      On or around January 13, 2020, Ms. Adams was hired by the Company as a salesperson based in the borough of Manhattan in New York, NY.

10.     Ms. Adams is a woman.

11.     At all relevant times, the Company was engaged in an industry affecting commerce and employed 15 or more employees during 20 or more calendar weeks in each current and/or preceding calendar year.

12.     As such, at all relevant times, the Company was an employer as defined by state and federal anti-discrimination laws, including the New York State Human Rights Law ("NYSHRL"), New York City Human Rights Law ("NYCHRL"), the Americans with Disabilities Act ("ADA") and Title VII, employing 15 or more employees during 20 or more calendar weeks in each current and/or preceding calendar year.

13.     At all relevant times, Ms. Adams' worksite was 463 7th Avenue, Suite 200, New York, NY 10018.

14.     At all relevant times, Ms. Adams was qualified for her position at the Company and her work performance was satisfactory.

15.     Throughout Ms. Adams' employment, Lee and Kemp were Ms. Adams' managers. Indeed, Lee and Kemp had the power to hire and/or fire Ms. Adams, supervised and controlled Ms. Adams' conditions of employment including her work schedule, played a role in determining Ms. Adams' rate and method of payment, and/or played a role in maintaining Ms. Adams' employment records.

16.     Kemp is a man and upon information and belief, non-disabled.

17.     Lee is, upon information and belief, non-disabled.

18.    On or around March 14, 2020, the Company's Manhattan showroom and offices were physically closed due to the COVID-19 pandemic, which began spreading rapidly and uncontrollably at the time.

19.    By virtue of the Company's sales processes, all of Ms. Adams' tasks could be completed online. The Company allowed Ms. Adams to work remotely.

20.    As such, Ms. Adams was able to fully and satisfactorily perform all the tasks required of her by the Company while working from home.

21.    On or around April 1, 2020, Ms. Adams found out that she was pregnant.

22.    On or around the third week of May 2020, Ms. Adams disclosed her pregnancy to Kemp.

23.    Instead of being elated or happy in response to Ms. Adams' disclosure, Kemp responded in an oddly deadpan, or otherwise sarcastic, tone when Ms. Adams disclosed her pregnancy, and seemed to be disappointed that Ms. Adams was pregnant at all.

24.    Ms. Adams' pregnancy was also disclosed to Lee, as it was disclosed to Lee through Kemp once Ms. Adams disclosed her pregnancy to Kemp.

25.    In or around the end of May 2020, during a medical appointment for her pregnancy, Ms. Adams found out that she was suffering from complications due to her pregnancy, including gestational diabetes.

26.    Ms. Adams' gestational diabetes made Ms. Adams more susceptible to illness and disease, including COVID-19.

27.    Ms. Adam's gestational diabetes is an impairment that substantially limited one or more of Ms. Adams' major life activities, including, but not limited to, eating, engaging in strenuous physical activity such as running, caring for herself, and maintaining energy levels. At

all relevant times, Ms. Adams' diabetes also affected one or more major bodily functions, including her metabolic and endocrine functions. As such, at all relevant times Ms. Adams was disabled under the ADA, the New York State Human Rights Law, and the New York City Human Rights Law.

28.     Ms. Adams' pregnancy also weakened Ms. Adams' immune system and additionally made Ms. Adams more susceptible to illness and disease, including COVID-19.

29.     On or around June 1, 2020, Kemp called Ms. Adams to discuss reopening plans for the Company, as around this time, New York was entering the first phase of reopening.

30.     Kemp stated to Ms. Adams that he would stagger employees' physical presence in the Company's showroom and offices.

31.     Kemp further mentioned that Ms. Adams would have to come into the Company's showroom and offices two days per week.

32.     Fearing harm to herself and her unborn baby, Ms. Adams requested the reasonable accommodation of waiting to return to the showroom until July 2020.

33.     Ms. Adams explained to Kemp that this reasonable accommodation request was important as she (Ms. Adams) had a high-risk pregnancy.

34.     Ms. Adams was also more at risk of infection from COVID-19 due to her vulnerable state as a pregnant woman with gestational diabetes.

35.     Additionally, this reasonable accommodation was not an undue burden on the Company, as Ms. Adams had fully and adequately performed all her tasks while working from home, as few, if any, customer interactions that Ms. Adams made were in person.

36.     Further, many Company employees, including Kemp himself, were working solely remotely during this time, making Ms. Adams' request less of an undue burden on the Company.

37.     Kemp delayed his response and did not give an answer to Ms. Adams during this call related to her request for a reasonable accommodation related to her pregnancy and disability.

38.     However, eventually, Kemp approved Ms. Adams' reasonable accommodation request. Accordingly, Ms. Adams continued to perform all the essential functions of her position on a remote basis and in a fully satisfactory manner.

39.     On or around June 30, 2020, Kemp again contacted Ms. Adams, along with the Company's head of human resources, Richard Eagan ("Eagan"), and asked Ms. Adams to confirm her work schedule for July 2020.

40.     Ms. Adams confirmed and made clear that she would be able to work in the office and showroom for the previously requested two days per week, and re-requested the reasonable accommodation of continuing to work from home the other days of the week due to the increased risk of COVID-19 infection and severe symptoms caused by her pregnancy and pregnancy-related disability. Ms. Adams did not insist on being allowed to work remotely part time, but did request to be allowed this as an accommodation. Indeed, allowing this remote work was clearly not an undue burden since the Company had previously indicated that Ms. Adams could come into the office for two days per week and work remotely on the other days.

41.     Kemp grew angry when Ms. Adams made this reasonable accommodation request, and said that Ms. Adams would now be required to work in the office three days per week, instead of the two days per week that the Company had originally requested. It appeared

clear that Kemp was retaliating against Ms. Adams for requesting and/or utilizing disability/pregnancy related reasonable accommodations.

42.     Due to this seemingly retaliatory declaration by Kemp, Ms. Adams raised protected concerns to both Kemp and Eagan that, since she had been successfully performing all her essential job functions from home, there was not a justified basis for the Company to summarily deny her accommodation request and suddenly insist that she come into the office more than the originally requested two days per week, especially since this would impose a substantial amount of risk to both herself and her unborn child due to the effects of her pregnancy and pregnancy-related disability on her immune system.

43.     Because other male employees had been allowed to work from home, and indeed were still being allowed to work from home, Ms. Adams also raised protected concerns that this sudden insistence by Kemp that she work in the office the majority of the week seemed to be singling her out for disparate discriminatory treatment due to her gender or pregnancy.

44.     During the call, Ms. Adams made clear that she wanted to keep her job at the Company and that she wanted to work out a mutually workable arrangement that would allow her to continue performing her job (as she had been satisfactorily doing all along). Indeed, Ms. Adams did not refuse to work in the office more than two days per week if it was necessary, but merely expressed her belief that she could perform all essential functions of her job while working in the office only two days per week, and asked to do this if possible.

45.     Kemp and Eagan refused to engage in an interactive dialogue with Ms. Adams, refused to respond to Ms. Adams' protected concerns, and hung up on her.

46.     The next day, on or around July 1, 2020, Kemp and Lee called Ms. Adams and informed Ms. Adams that she was terminated from the Company effective immediately.

47.     As such, Ms. Adams was involuntarily terminated from the Company on July 1, 2020.

48.     As Ms. Adams' termination came one day after Ms. Adams requested the reasonable accommodation of working the originally requested two days a week in the office to avoid complications to her pregnancy and gestational diabetes disability, and additionally raised protected concerns that the denial of this request was due to her pregnancy, disability or gender, it is clear that Ms. Adams was terminated in retaliation for these protected concerns and/or her pregnancy, disability or gender.

49.     Indeed, a number of male, non-disabled employees were allowed to continue to work from home for the Company and during this period were not required to work in the office at all, including Kemp himself.

50.     Upon information and belief, the Company replaced Ms. Adams with a similarly or lesser qualified, non-pregnant, and non-disabled individual.

51.     Ms. Adams' termination took place in New York City, and Lee and Kemp were in New York City when they made the decision to fire Ms. Adams, as well as when they in fact fired Ms. Adams.

52.     On August 14, 2020, Ms. Adams timely filed a Charge of Discrimination with the New York City Commission on Human Rights ("NYCCHR") and cross-filed this charge with the United States Equal Employment Opportunity Commission ("EEOC").

53.     On June 17, 2021, the NYCCHR granted Ms. Adams an administrative closure to allow him to pursue her case in court.

54.     On July 15, 2021, the EEOC issued Ms. Adams a Right to Sue letter.

55.     This lawsuit is timely filed.

## COUNT I

### (Sex Discrimination in Violation of Title VII, 42 U.S.C. §§2000e, et seq.)

### Plaintiff v. The Company

56.     Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

57.     During all relevant periods, the Company was an employer under Title VII, 42 U.S.C. §§ 2000e, et. seq. (hereinafter, "Title VII") because it was a person engaged in an industry affecting commerce and had fifteen or more employees for each working day in each of twenty or more calendar weeks during the relevant calendar years.

58.     Ms. Adams is a woman.

59.     The Company, by and through its agents and affiliates, including, but not limited to Lee and Kemp, harassed and discriminated against Ms. Adams with respect to her compensation, terms, conditions, or privileges of employment, because of Ms. Adams' sex, and/or because Ms. Adams was a pregnant woman and a disabled pregnant woman ("sex plus" discrimination).

60.     Ms. Adams was subjected to a number of adverse actions because of her gender and gender-related pregnancy status, including, but not limited to, a harassing and hostile work environment, improper requests to work in the office when male employees were not asked to do the same, and the termination of her employment in whole or in part because of her sex and/or because Ms. Adams was a pregnant woman.

61.     The Company acted with malice and/or with reckless indifference to the federally protected rights of Ms. Adams.

62.     As a direct and proximate result of Defendant's violation of Title VII, Ms. Adams has suffered and continues to suffer damages, including, but not limited to, lost compensation

and benefits, loss of earning capacity, other monetary harms, pain and suffering, loss of

enjoyment of life, and emotional damages.

63.     Ms. Adams seeks all damages to which she is entitled, including, but not limited

to lost compensation and benefits (including, but not limited to, back pay and front pay), other

monetary damages, emotional distress damages, other compensatory damages (including, but not

limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish,

loss of enjoyment of life, and other nonpecuniary losses), punitive damages, injury to reputation,

diminished earning capacity, interest, attorney's fees, and costs.


**COUNT II**

**(Sex Discrimination in Violation of the New York State Human Rights Law,**

**Executive Article 15, Section 296)**

**Plaintiff v. All Defendants (including the Company, Lee and Kemp)**

64.     The Plaintiff herein incorporates all paragraphs above and below as if set forth

fully herein.

65.     Ms. Adams is a woman.

66.     The Company, by and through its agents and affiliates, including, but not limited

to Lee and Kemp, harassed and discriminated against Ms. Adams with respect to her

compensation, terms, conditions, or privileges of employment, because of Ms. Adams' sex,

and/or because Ms. Adams is a pregnant woman.

67.     Ms. Adams was subjected to a number of adverse actions, including, but not

limited to, a harassing and hostile work environment, improper requests to work in the office

when male employees were not asked to do the same, and the termination of her employment in

whole or in part because of her sex and/or because Ms. Adams was a pregnant woman and a disabled pregnant woman ("sex plus" discrimination).

68.     Lee aided and abetted in the Company's harassing and discriminatory actions, intended to discriminate against Ms. Adams due to her sex, and/or knew of their supporting role in an enterprise designed to deprive Ms. Adams of the rights guaranteed to her under the NYSHRL.

69.     Kemp aided and abetted in the Company's harassing and discriminatory actions, intended to discriminate against Ms. Adams due to her sex, and/or knew of their supporting role in an enterprise designed to deprive Ms. Adams of the rights guaranteed to her under the NYSHRL.

70.     The Defendants' actions were wanton, malicious, and/or oppressive.

71.     The Defendants acted willfully and/or with reckless disregard to the state protected rights of Ms. Adams.

72.     As a direct and proximate result of the Defendants' violations of NYSHRL, Ms. Adams has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, interest on lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

73.     Ms. Adams seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain,

suffering, inconvenience, mental anguish, and loss of enjoyment of life), attorneys' fees, interest, and costs.

## COUNT III

**(Sex Discrimination under New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York)**

**Plaintiff v. All Defendants (including the Company, Lee and Kemp)**

74.      The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

75.      The Company was an employer under the New York City Human Rights Law ("NYCHRL").

76.      Ms. Adams is a woman.

77.      The Company, by and through its agents and affiliates, including, but not limited to Lee and Kemp, harassed and discriminated against Ms. Adams with respect to her compensation, terms, conditions, or privileges of employment, because of Ms. Adams' sex, and/or because Ms. Adams was both a pregnant woman and a disabled pregnant woman ("sex plus" discrimination).

78.      Ms. Adams was subjected to a number of adverse actions, including, but not limited to, a harassing and hostile work environment, improper requests to work in the office when male employees were not asked to do the same, and the termination of her employment in whole or in part because of her sex and/or because Ms. Adams is a pregnant woman.

79.     Lee aided, abetted, incited, compelled and/or coerced the Company's discriminatory conduct, including, but not limited to, by providing or attempt to provide assistance to individuals participating in conduct forbidden under the NYCHRL.

80.     Kemp aided, abetted, incited, compelled and/or coerced the Company's discriminatory conduct, including, but not limited to, by providing or attempt to provide assistance to individuals participating in conduct forbidden under the NYCHRL.

81.     The Defendants' actions were wanton, malicious, and/or oppressive. The Defendants acted willfully and/or with reckless disregard to the state protected rights of Ms. Adams.

82.     As a direct and proximate result of the Defendants' violation of the NYCHRL, Ms. Adams has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

83.     Ms. Adams seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

**COUNT IV**

**(Pregnancy Discrimination and Failure to Provide Pregnancy-Related Accommodations in Violation of the New York State Human Rights Law, Executive Article 15, Section 296)**

**Plaintiff v. All Defendants (including the Company, Lee and Kemp)**

84.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

85.     Ms. Adams at the time of her termination from the Company, was a pregnant woman.

86.     The Company, by and through its agents and affiliates, including, but not limited to Lee and Kemp, harassed and discriminated against Ms. Adams with respect to her compensation, terms, conditions, or privileges of employment, because of Ms. Adams' pregnancy.

87.     Ms. Adams requested pregnancy-related reasonable accommodations that would have assisted her in performing the essential functions of her job. These requested reasonable accommodations included working from home to avoid complications due to COVID-19 virus, and later requesting a partially remote work schedule (including two days of work in the office) because of her pregnancy and pregnancy-related gestational diabetes, which caused a weakened immune system and increased vulnerability to severe COVID-19 symptoms.

88.     The Company failed to provide Ms. Adams with one or more requested pregnancy-related reasonable accommodations that would have assisted her in performing the essential functions of her job and/or would have allowed her to perform the essential functions of her job, including by insisting that Ms. Adams had to work in the office more days than her

requested reasonable accommodations and/or revoking accommodations previously provided to Ms. Adams.

89.     The Company and its agents failed to engage in an interactive dialogue related to some or all of Ms. Adams' pregnancy-related accommodation requests, including her request to work a reduced in-person schedule of two days a week, while working remotely the rest of the time, due to pregnancy-related risks and other pregnancy-related factors.

90.     Thus, the Company wrongfully failed to explore alternative accommodations that might have been less burdensome and likewise wrongfully failed to provide such less burdensome alternative accommodations that could have been identified through an interactive dialogue.

91.     Ms. Adams' requested pregnancy-related accommodations did not pose an undue burden on the Company.

92.     Ms. Adams was subjected to a number of adverse actions, including, but not limited to, a harassing and hostile work environment, improper requests to work in the office when male and/or non-pregnant female employees were not asked to do the same, and the termination of her employment in whole or in part because of Ms. Adams' pregnancy.

93.     Lee aided and abetted in the Company's harassing and discriminatory actions, intended to discriminate against Ms. Adams due to her pregnancy, and/or knew of their supporting role in an enterprise designed to deprive Ms. Adams of the rights guaranteed to her under the NYSHRL.

94.     Kemp aided and abetted in the Company's harassing and discriminatory actions, intended to discriminate against Ms. Adams due to her pregnancy, and/or knew of their

supporting role in an enterprise designed to deprive Ms. Adams of the rights guaranteed to her under the NYSHRL.

95.     The Defendants' actions were wanton, malicious, and/or oppressive.

96.     The Defendants acted willfully and/or with reckless disregard to the state protected rights of Ms. Adams.

97.     As a direct and proximate result of the Defendants' violations of NYSHRL, Ms. Adams has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, interest on lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

98.     Ms. Adams seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), attorneys' fees, interest, and costs.

**COUNT V**

**(Pregnancy Discrimination and Failure to Provide Pregnancy-Related Accommodations under New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York)**

**Plaintiff v. All Defendants (including the Company, Lee and Kemp)**

99.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

100.     The Company was an employer under the New York City Human Rights Law ("NYCHRL").

101.     Ms. Adams, at the time of her termination from the Company, was a pregnant woman.

102.     Ms. Adams requested pregnancy-related reasonable accommodations that would have assisted her in performing the essential functions of her job. These requested reasonable accommodations included working from home to avoid complications due to COVID-19 virus, and later requesting a partially remote work schedule (including two days of work in the office) because of her pregnancy and pregnancy-related gestational diabetes, which caused a weakened immune system and increased vulnerability to severe COVID-19 symptoms.

103.     The Company failed to provide Ms. Adams with one or more requested pregnancy-related reasonable accommodations that would have assisted her in performing the essential functions of her job and/or would have allowed her to perform the essential functions of her job, including by insisting that Ms. Adams had to work in the office more days than her requested reasonable accommodations and/or revoking accommodations previously provided to Ms. Adams.

104.    The Company and its agents failed to engage in an interactive dialogue related to some or all of Ms. Adams' pregnancy-related accommodation requests, including her request to work a reduced in-person schedule of two days a week, while working remotely the rest of the time, due to pregnancy-related risks and other pregnancy-related factors.

105.    Thus, the Company wrongfully failed to explore alternative accommodations that might have been less burdensome and likewise wrongfully failed to provide such less burdensome alternative accommodations that could have been identified through an interactive dialogue.

106.    Ms. Adams' requested pregnancy-related accommodations did not pose an undue burden on the Company.

107.    Ms. Adams was subjected to a number of adverse actions, including, but not limited to, a harassing and hostile work environment, improper requests to work in the office when male and/or non-pregnant female employees were not asked to do the same, and the termination of her employment in whole or in part because of Ms. Adams' pregnancy.

108.    Lee aided, abetted, incited, compelled and/or coerced the Company's discriminatory conduct, including, but not limited to, by providing or attempt to provide assistance to individuals participating in conduct forbidden under the NYCHRL.

109.    Kemp aided, abetted, incited, compelled and/or coerced the Company's discriminatory conduct, including, but not limited to, by providing or attempt to provide assistance to individuals participating in conduct forbidden under the NYCHRL.

110.    The Defendants' actions were wanton, malicious, and/or oppressive. The Defendants acted willfully and/or with reckless disregard to the state protected rights of Ms. Adams.

111.    As a direct and proximate result of the Defendants' violation of the NYCHRL, Ms. Adams has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

112.    Ms. Adams seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT VI

### (Disability Discrimination and Failure to Accommodate in Violation of the Americans With Disabilities Act, 42 U.S.C. §§12101, et seq.)
### Plaintiff v. the Company

113.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

114.    At all relevant times, Ms. Adam's gestational diabetes was an impairment that substantially limited one or more of Ms. Adams' major life activities, including, but not limited to, eating, engaging in strenuous physical activity such as running, caring for herself, and maintaining energy levels. At all relevant times, Ms. Adams' diabetes also affected one or more major bodily functions, including her metabolic and endocrine functions. As such, at all relevant

times following the commencement of her pregnancy and resulting gestational diabetes, Ms. Adams was disabled under the ADA.

115.    At all relevant times, Ms. Adams was a qualified individual and was capable of performing the essential functions of her job with or without one or more reasonable accommodations.

116.    Ms. Adams disclosed her disability to the Company and/or the Company was aware of Ms. Adams' disability and/or the Company regarded Ms. Adams as disabled.

117.    Ms. Adams requested disability-related reasonable accommodations that would have assisted her in performing the essential functions of her job. These requested reasonable accommodations included working from home to avoid complications due to COVID-19 virus, and later requesting a partially remote work schedule (including two days of work in the office) because of the symptoms of her disability, including the weakened immune system and increased vulnerability to severe COVID-19 symptoms caused by her disability.

118.    The Company failed to provide Ms. Adams with one or more reasonable accommodations that would have assisted her in performing the essential functions of her job and/or would have allowed her to perform the essential functions of her job, including by insisting that Ms. Adams had to work in the office more days than her requested reasonable accommodations and/or revoking accommodations previously provided to Ms. Adams.

119.    The Company and its agents failed to engage in an interactive dialogue related to some or all of Ms. Adams' disability-related accommodations requests, including her request to work a reduced schedule of two days a week to avoid COVID-19 infection.

120.    Thus, the Company wrongfully failed to explore alternative accommodations that might have been less burdensome and likewise wrongfully failed to provide such less

burdensome alternative accommodations that could have been identified through an interactive dialogue.

121.    Ms. Adams' requested disability-related accommodations did not pose an undue burden on the Company.

122.    The Company, by and through its agents, discriminated against Ms. Adams due to her disability by subjecting Ms. Adams to adverse actions including, but not limited to, subjecting Ms. Adams to a harassing and otherwise hostile work environment, improper requests to work in the office, and/or terminating Ms. Adams.

123.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Ms. Adams.

124.    As a direct and proximate result of the Company's violation of the ADA, Ms. Adams has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

125.    Ms. Adams seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

**COUNT VII**

**(Disability Discrimination and Failure to Accommodate in Violation of the New York State Human Rights Law, Executive Article 15, Section 296)**

**Plaintiff v. All Defendants (including the Company, Lee and Kemp)**

126.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

127.     At all relevant times, Ms. Adam's gestational diabetes was an impairment that substantially limited one or more of Ms. Adams' major life activities, including, but not limited to, eating, engaging in strenuous physical activity such as running, caring for herself, and maintaining energy levels. At all relevant times, Ms. Adams' diabetes also affected one or more major bodily functions, including her metabolic and endocrine functions. As such, at all relevant times Ms. Adams was disabled under the NYSHRL.

128.     At all relevant times, Ms. Adams was a qualified individual and was capable of performing the essential functions of her job with or without one or more reasonable accommodations.

129.     Ms. Adams disclosed her disability to the Company and/or the Company was aware of Ms. Adams' disability and/or the Company regarded Ms. Adams as disabled.

130.     Ms. Adams requested disability-related reasonable accommodations that would have assisted her in performing the essential functions of her job. These requested reasonable accommodations included working from home to avoid disability-related complications due to COVID-19 virus, and later requesting a partially remote work schedule (including two days of work in the office) because of the symptoms of her disability, including the weakened immune system and increased vulnerability to severe COVID-19 symptoms caused by her disability.

131.     The Company failed to provide Ms. Adams with one or more reasonable accommodations that would have assisted her in performing the essential functions of her job and/or would have allowed her to perform the essential functions of her job, including by insisting that Ms. Adams had to work in the office more days than her requested reasonable accommodations and/or revoking accommodations previously provided to Ms. Adams.

132.     The Company and its agents failed to engage in an interactive dialogue related to some or all of Ms. Adams' disability-related accommodations requests, including her request to work a reduced schedule of two days a week to avoid COVID-19 infection.

133.     Thus, the Company wrongfully failed to explore alternative accommodations that might have been less burdensome and likewise wrongfully failed to provide such less burdensome alternative accommodations that could have been identified through an interactive dialogue.

134.     Ms. Adams' requested disability-related accommodations did not pose an undue burden on the Company.

135.     The Company, by and through its agents, discriminated against Ms. Adams due to her disability by subjecting Ms. Adams to adverse actions including, but not limited to, subjecting Ms. Adams to a harassing and otherwise hostile work environment, improper requests to work in the office, and/or terminating Ms. Adams.

136.     Lee and Kemp aided and abetted in the Company's harassing and discriminatory actions, intended to discriminate against Ms. Adams due to her disability, and/or knew of their supporting role in an enterprise designed to deprive Ms. Adams of the rights guaranteed to her under the NYSHRL.

137.     The Defendants' actions were wanton, malicious, and/or oppressive.

138.    The Defendants acted willfully and/or with reckless disregard to the state protected rights of Ms. Adams.

139.    As a direct and proximate result of the Company's violation of the NYSHRL, Ms. Adams has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

140.    Ms. Adams seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT VIII

**(Disability Discrimination and Failure to Accommodate in Violation of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York)**

**Plaintiff v. All Defendants (including the Company, Lee and Kemp)**

141.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

142.    At all relevant times, Ms. Adams' gestational diabetes was an impairment that substantially limited one or more of Ms. Adams' major life activities, including, but not limited to, eating, engaging in strenuous physical activity such as running, caring for herself, and

maintaining energy levels. At all relevant times, Ms. Adams' gestational diabetes also affected one or more major bodily functions, including her metabolic and endocrine functions. As such, at all relevant times Ms. Adams was disabled under the NYCHRL.

143.    At all relevant times, Ms. Adams was a qualified individual and was capable of performing the essential functions of her job with or without one or more reasonable accommodations.

144.    Ms. Adams disclosed her disability to the Company and/or the Company was aware of Ms. Adams' disability and/or the Company regarded Ms. Adams as disabled.

145.    Ms. Adams requested disability-related reasonable accommodations that would have assisted her in performing the essential functions of her job. These requested reasonable accommodations included working from home to avoid disability-related complications due to COVID-19 virus, and later requesting a partially remote work schedule (including two days of work in the office) because of the symptoms of her disability, including the weakened immune system and increased vulnerability to severe COVID-19 symptoms caused by her disability.

146.    The Company failed to provide Ms. Adams with one or more reasonable accommodations that would have assisted her in performing the essential functions of her job and/or would have allowed her to perform the essential functions of her job, including by insisting that Ms. Adams had to work in the office more days than her requested reasonable accommodations and/or revoking accommodations previously provided to Ms. Adams.

147.    The Company and its agents failed to engage in an interactive dialogue related to some or all of Ms. Adams' disability-related accommodations requests, including her request to work a reduced schedule of two days a week to avoid COVID-19 infection.

148. Thus, the Company wrongfully failed to explore alternative accommodations that might have been less burdensome and likewise wrongfully failed to provide such less burdensome alternative accommodations that could have been identified through an interactive dialogue.

149. Ms. Adams' requested disability-related accommodations did not pose an undue burden on the Company.

150. The Company, by and through its agents, discriminated against Ms. Adams due to her disability by subjecting Ms. Adams to adverse actions including, but not limited to, subjecting Ms. Adams to a harassing and otherwise hostile work environment, improper requests to work in the office, and/or terminating Ms. Adams.

151. Lee and Kemp aided and abetted in the Company's harassing and discriminatory actions, intended to discriminate against Mr. Adams due to her disabilities, and/or knew of their supporting role in an enterprise designed to deprive Ms. Adams of the rights guaranteed to her under the NYCHRL.

152. The Defendants' actions were wanton, malicious, and/or oppressive.

153. The Defendants acted willfully and/or with reckless disregard to the state protected rights of Ms. Adams.

154. As a direct and proximate result of the Company's violation of the NYCHRL, Ms. Adams has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

155. Ms. Adams seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay),

diminished earning capacity, injury to reputation, other monetary damages, compensatory

damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses),

damages for emotional distress (including, but not limited to, damages for emotional pain,

suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages,

attorneys' fees, interest, and costs.

## COUNT IX

### (Retaliation in Violation of Title VII, 42 U.S.C. §§ 2000e, *et seq.* )

### Plaintiff v. the Company

156.    Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

157.    During all relevant periods, the Company was an employer under Title VII, 42

U.S.C. §§ 2000e, et. seq. (hereinafter, "Title VII") because it was a person engaged in an

industry affecting commerce and had fifteen or more employees for each working day in each of

twenty or more calendar weeks during the relevant calendar years.

158.    The Company, by and through its agents and affiliates, harassed and

discriminated against Ms. Adams with respect to her compensation, terms, conditions, or

privileges of employment, because of Ms. Adams' sex and/or because Ms. Adams is a pregnant

woman, as well as a disabled pregnant woman ("sex plus" discrimination).

159.    Ms. Adams engaged in protected activity under Title VII, including, but not

limited to, by opposing and expressing protected concerns and/or engaging in other protected

activity regarding the harassing and discriminatory actions improperly taken by the Defendant

and its employees and agents, based on Ms. Adams' sex and/or because Ms. Adams was a

pregnant woman and/or a disabled pregnant woman.

160.    More specifically, the Company subjected Ms. Adams to adverse actions, including, but not limited to, a hostile and harassing work environment, improper requests to work in the office, and the termination of Ms. Adams' employment for retaliatory reasons because Ms. Adams engaged in protected activity opposing discrimination related to her sex and/or status as a pregnant woman and/or disabled pregnant woman.

161.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Ms. Adams.

162.    As a direct and proximate result of Defendants' violation of Title VII, Ms. Adams has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, loss of earning capacity, other monetary harms, pain and suffering, loss of enjoyment of life, and emotional damages.

163.    Ms. Adams seeks all damages to which she is entitled, including, but not limited to lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, emotional distress damages, other compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, injury to reputation, diminished earning capacity, interest, attorney's fees, and costs.

**COUNT X**

**(Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. §§12101, et seq.)**

**Plaintiff v. the Company**

164.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

165.    Ms. Adams engaged in protected activity under the ADA, including, but not limited to, by requesting and/or utilizing reasonable accommodations for her disability which were intended to allow Ms. Adams to perform the essential functions of her job, raising protected concerns about harassment, disparate treatment, and discrimination motivated by her disability, and raising concerns about the Company's improper failure to provide requested accommodations for her disabilities.

166.    The Company retaliated against Ms. Adams for her protected activities, including the above-mentioned protected activities, by subjecting Ms. Adams to adverse actions, including, but not limited to, a harassing and otherwise hostile work environment, improper requests to work from the office, and/or the termination of Ms. Adams' employment.

167.    The Company unlawfully coerced, intimidated, threatened, and/or interfered with Ms. Adams' exercising of, or enjoyment of, one or more rights granted by the ADA.

168.    The Company acted with malice and/or with reckless indifference to the federally protected rights of Ms. Adams.

169.    As a direct and proximate result of the Company's violation of the ADA, Ms. Adams suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, other monetary harms, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

170.    Ms. Adams seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory

damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, interest, and costs.

## COUNT XI

### (Retaliation for Engaging in Protected Activity Protected Activity in Violation of New York State Human Rights Law, Executive Article 15, Section 296)

### Plaintiff v. All Defendants (including the Company, Lee and Kemp)

171.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

172.     Ms. Adams engaged in protected activity under the NYSHRL, including, but not limited to, by (i) requesting and utilizing reasonable accommodations for her disability and pregnancy which were intended to allow Ms. Adams to perform the essential functions of her job, (ii) raising protected concerns about, and otherwise opposing, harassment, disparate treatment and discrimination motivated by her sex, pregnancy and disability, and  (iii) raising protected concerns about the Company's improper failure to provide requested accommodations for her disabilities and/or pregnancy.

173.     The Defendants unlawfully coerced, intimidated, threatened and/or interfered with Ms. Adams' exercising of or enjoyment of rights granted by the NYSHRL.

174.     More specifically, the Defendants discriminated and/or retaliated against Ms. Adams for her protected activities, including the above-mentioned protected activities, under the NYSHRL, by subjecting Ms. Adams to adverse actions, including but not limited to, a harassing

and otherwise hostile work environment, improper requests to work from the office, and/or the termination of Ms. Adams' employment.

175.   Lee and Kemp aided and abetted in the Company's harassing and discriminatory actions, intended to discriminate against Ms. Adams due to her disabilities, and/or knew of their supporting role in an enterprise designed to deprive Ms. Adams of the rights guaranteed to her under the NYSHRL.

176.   The Defendants' actions were wanton, malicious, and/or oppressive. The Defendants acted willfully and/or with reckless disregard to the state protected rights of Ms. Adams.

177.   As a direct and proximate result of the Defendants' violation of the NYSHRL, Ms. Adams has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

178.    Ms. Adams seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.

## COUNT XII

**(Retaliation for Engaging in Protected Activity in Violation of New York City**

**Human Rights Law, Title 8 of the Administrative Code of the City of New York)**

**Plaintiff v. All Defendants (including the Company, Lee and Kemp)**

179.     The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

180.     Ms. Adams engaged in protected activity under the NYCHRL, including, but not limited to, by (i) requesting and utilizing reasonable accommodations for her disability and pregnancy which were intended to allow Ms. Adams to perform the essential functions of her job, (ii) raising protected concerns about, and otherwise opposing, harassment, disparate treatment and discrimination motivated by her sex, pregnancy and disability, and (iii) raising protected concerns about the Company's improper failure to provide requested accommodations for her disabilities and/or pregnancy.

181.     The Defendants unlawfully coerced, intimidated, threatened and/or interfered with Ms. Adams' exercising of or enjoyment of rights granted by the NYCHRL.

182.     More specifically, the Defendants discriminated and/or retaliated against Ms. Adams for her protected activities, including the above-mentioned protected activities, under the NYCHRL, by subjecting Ms. Adams to adverse actions, including but not limited to, a harassing and otherwise hostile work environment, improper requests to work from the office, and/or the termination of Ms. Adams' employment.

183.     Lee and Kemp aided and abetted in the Company's harassing and discriminatory actions, intended to discriminate against Ms. Adams due to her disabilities, and/or knew of their supporting role in an enterprise designed to deprive Ms. Adams of the rights guaranteed to her under the NYCHRL.

184.    The Defendants' actions were wanton, malicious, and/or oppressive. The Defendants acted willfully and/or with reckless disregard to the state protected rights of Ms. Adams.

185.    As a direct and proximate result of the Defendants' violation of the NYCHRL, Ms. Adams has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

186.     Ms. Adams seeks all damages to which she is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages compensatory damages (including, but not limited to, future pecuniary losses and other nonpecuniary losses), damages for emotional distress (including, but not limited to, damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life), punitive damages, attorneys' fees, interest, and costs.


**COUNT XIII**

**(Failure to Pay Overtime in Violation of 29 U.S.C. §§ 201 et seq.)**

**Plaintiff v. All Defendants (including the Company, Lee and Kemp)**

187.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

188.    At all relevant times, the Company was an enterprise as defined under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. (hereinafter, "FLSA").

189.    Indeed, at all relevant times, the Company had annual gross volume of sales made or business done greater than or equal to $500,000.

190.    Furthermore, at all relevant times, the Company was an enterprise engaged in interstate commerce.

191.    Additionally, during all relevant time periods, Ms. Adams was an employee who was engaged in interstate commerce.

192.    Ms. Adams was not exempt under the FLSA and equivalent state law, and as such was owed overtime pay of 1.5x her base rate when she worked more than 40 hours per week.

193.    The Company was aware that Ms. Adams was a non-exempt employee under the FLSA and equivalent state law and willfully failed to pay Ms. Adams the wages she was owed.

194.    The Defendants scheduled Ms. Adams to work more than 40 hours per week and Ms. Adams did in fact always work more than 40 hours per week.

195.    Ms. Adams would always work a total of at least 10 hours a day, five days a week. All of these hours were working time, as Ms. Adams would work through her lunch period and did not take off other breaks. Thus, Ms. Adams was working for all of these 10 hours (or more) per day.

196.    Accordingly, Ms. Adams worked at least 50 hours per week every week of her employment.

197.    Furthermore, at a frequency of at least 1 day per week (and sometimes more), Ms. Adams would work more than 10 hours per day due to the demands of her work. Thus, in most weeks, Ms. Adams in fact worked for more than 50 hours, sometimes significantly more.

198.    For example, during the week of March 16, 2020, through March 20, 2020, Ms. Adams worked more than 50 hours due to the demands of closing sales for a large client.

Indeed, Ms. Adams worked from 8am to 7pm and worked through her lunch break during every day of this week. This is but one illustrative example of the many weeks in which Ms. Adams worked significantly in excess of 50 hours.

199.    During her employment, Ms. Adams would start work no later than 8am, would work through her lunch break, and would end work at 6pm or later.

200.    As such, Ms. Adams, worked a total of at least 10 hours of overtime every week of her employment through her termination on July 1, 2020, and often more.

201.    Ms. Adams was not paid anything extra for the overtime hours he worked, as he received a salary plus commission that was less than 50% of her compensation and received no extra pay for working overtime hours.

202.    As such, the Defendants paid Ms. Adams less than the wages owed to her under the FLSA and equivalent state law.

203.    Lee is a corporate officer and/or manager of the Company and exercised significant operational control over the Company (and the Plaintiff), including because he had the power to hire and/or fire employees, the power to determine salaries and the responsibility to maintain employment records. As such, Lee is individually liable under the FLSA.

204.    Kemp is a corporate officer and/or manager of the Company and exercised significant operational control over the Company (and the Plaintiff), including because he had the power to hire and/or fire employees, the power to determine salaries and the responsibility to maintain employment records. As such, Kemp is individually liable under the FLSA.

205.    The Company, as well as Lee and Kemp, knowingly and willfully failed to pay Ms. Adams all pay that she was owed in violation of the FLSA.

206.    As a direct and proximate result of the Defendants' violations of the FLSA, Ms. Adams has suffered and continues to suffer damages, including, but not limited to, lost wages.

207.    Ms. Adams seeks all damages to which she is entitled, including, but not limited to, lost wages, liquidated damages in the amount of the lost wages for a knowing and willful violation of the FLSA, interest on the lost wages and liquidated damages, attorneys' fees, and costs.

**COUNT XIV**

**(Failure to Pay Overtime in Violation of 12 NYCRR 142 - Promulgated under Article 19 of the New York State Labor Laws)**

**Plaintiff v. All Defendants (including the Company, Lee and Kemp)**

208.    The Plaintiff incorporates all paragraphs above and below as if set forth fully herein.

209.    The Company is an employer under Part 142 of Title 12 of the Official Compilation of Rules, and Regulations of the state of New York promulgated under Article 19 of the New York State Labor Laws ("12 NYCRR 142") and Ms. Adams is an employee of the Company under 12 NYCRR 142.

210.    Ms. Adams was not exempt from New York overtime pay laws and as such was owed overtime pay of 1.5x her base rate when he worked more than 40 hours per week.

211.    The Company was aware that Ms. Adams was a non-exempt employee under New York overtime pay laws and willfully failed to pay Ms. Adams the wages she was owed.

212.    Ms. Adams worked a total of at least 10 hours of overtime every week of her employment through her termination on July 1, 2020, and often more.

213.    Ms. Adams was not paid anything extra for the overtime hours she worked, as she received a salary plus commission that was less than 50% of her compensation and received no extra pay for working overtime hours.

214.    As such, the Defendants paid Ms. Adams less than the wages owed to her under New York law.

215.    Lee is an agent or officer of the Company who paid Ms. Adams less than the wages owed to her under New York law.

216.    Kemp is an agent or officer of the Company who paid Ms. Adams less than the wages owed to her under New York law.

217.    Defendants knowingly, willfully and in bad faith failed to pay Ms. Adams time and half for overtime pay for all hours worked in excess of 40 hours per week.

218.    As a direct and proximate result of the Defendants' violations of 12 NYCRR 142, Ms. Adams has suffered and continues to suffer damages, including, but not limited to, lost wages, interest on lost wages, attorney's fees, and costs.

219.    Ms. Adams seeks all damages to which she is entitled, including, but not limited to, lost wages, liquidated (i.e. double) damages, interest on lost wages, attorneys' fees, and costs.

WHEREFORE, the plaintiff, Claudia Adams, respectfully prays that this honorable court:

A.  Schedule this matter for trial by jury;

B.  Find the Defendant liable on all counts;

C.  Award the Plaintiff her lost compensation and benefits (including, but not limited to, back pay and front pay);

D.  Award the Plaintiff other monetary damages, including damages for her
    diminished earning capacity and injury to reputation;

E.  Award the Plaintiff damages for her emotional pain, mental anguish, loss of
    enjoyment of life, suffering, and other emotional distress damages;

F.  Award the Plaintiff compensatory damages, including, but not limited to, future
    pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss
    of enjoyment of life, and other nonpecuniary losses;

G.  Award the Plaintiff lost wages, including overtime-related lost wages;

H.  Award the Plaintiff liquidated damages;

I.   Award the Plaintiff punitive damages;

J.  Award the Plaintiff her reasonable attorney's fees;

K.  Award the Plaintiff interest and costs;

L.  Award the Plaintiff all other damages to which she is entitled; and

M.  Grant such further relief as is just and equitable.

Respectfully Submitted,

CLAUDIA ADAMS

By her attorneys,

THE LAW OFFICES OF WYATT
& ASSOCIATES P.L.L.C

Date:  July 19, 2021                    By: ___/s/Trevor Brice_____

Benjamin J. Wyatt, NY BAR #5604590
BWyatt@Wyattlegalservices.com

Timothy Brock, NY BAR # 5614151
tbrock@wyattlegalservices.com

Trevor R. Brice NY BAR # 5816087
Trevor@wyattlegalservices.com

Main Office
The Law Offices of Wyatt & Associates,
P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1111
Facsimile: (603) 685-2868

New York Office
The Law Offices of Wyatt & Associates,
P.L.L.C.
418 Broadway, 2nd Floor
Albany, NY 12207