## Settlement Agreement and Release

This Settlement Agreement and Release (the "Agreement") is among Claudia Adams ("Adams" or "Releasor"), ByDesign, LLC ("ByDesign"), Jay Lee ("JL"), and Russell Kemp ("RK") (Collectively referred to as "Defendants," or "Releasees") (each also referred to herein individually as a "Party," and collectively as the "Parties"). The Parties recite, agree and provide as follows:

**WHEREAS**, ByDesign employed Adams as an employee at ByDesign's location at 463 Seventh Ave., New York, New York, 10018, from January 13, 2020 until July 1, 2020;

**WHEREAS**, Adams subsequently commenced litigation in the United States District Court for the Southern District of New York, Case No. 21-CV-06157 against Defendants (the "Lawsuit");

**WHEREAS**, the Complaint of Adams alleged 13 Causes of Action, including but not limited to those relating to violations of Title VII (42 U.S.C. §§ 2000e, et. seq.), Sex Discrimination in Violation of the New York State Human Rights Law, Executive Article 15, Section 296, Sex Discrimination under New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York, Pregnancy Discrimination and Failure to Provide Pregnancy-Related Accommodations in Violation of the New York State Human Rights Law, Executive Article 15, Section 296, Pregnancy Discrimination and Failure to Provide Pregnancy-Related Accommodations under New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York, and Disability Discrimination and Failure to Accommodate in Violation of the Americans With Disabilities Act, 42 U.S.C. §§12101, et seq.;

**WHEREAS**, the Defendants denied each and every allegation of wrongdoing alleged by Adams;

**WHEREAS**, the Parties desire to enter into this Agreement in order to avoid further costs of litigation and to fully and finally resolve all of her disputes, including but not limited to the Lawsuit and to be completely free of any further controversy with respect to the claims that were asserted or could have been asserted in, or relate in any way whatsoever to, the Lawsuit against Defendants.; and

**WHEREAS**, Adams acknowledges and agrees that the Settlement Payment provided for herein is provided as consideration for this Agreement to voluntarily dismiss, waive and withdraw with prejudice all claims, complaints, charges, administrative actions and civil actions concerning Releasees alleged violations of the FLSA or NYLL against Releasees, as well as all other allegations in the Complaint.

**NOW, THEREFORE**, based upon their mutual promises and other good and valuable consideration, the Parties agree as follows:

1.  **Definitions.** The statements and definitions contained in the above recital paragraphs are incorporated herein with the same force and effect as if fully set forth herein at length. In addition, the terms set forth below shall have the following definitions:

   1.1.   "Effective Date" means eight (8) calendar days after the Agreement is signed by Adams, provided Adams does not revoke it before then.

   1.2.   "Electronic Identities" means e-mail addresses or other electronic, social media or other medium's names, nicknames, addresses or other identifiers or designations that state or imply the Releasees, including by use of a play on words or similar-sounding names to Releasees, either singly, jointly or collectively, that she uses or over which she has custody, control or ownership.

   1.3.   " Release" means the waiver of claims set out in Paragraph 7 of this Agreement.

   1.4.   "Released Matters" means claims that Adams is giving up under Paragraph 7 of this Agreement.

   1.5.   "Releasees" means ByDesign, JL, and RK, and their respective parent companies, related business entities, predecessors, successors, assigns, affiliates, subsidiaries, divisions, agents and related parties and each of their respective principals, owners (direct or indirect), partners, proprietors, members, managing members, principals, members of their governing boards, shareholders, directors, officers, trustees, stockholders, representatives, insurers, reinsurers, agents, servants, residents, employees, parties, managing agents, and attorneys and other professionals in their individual and representative capacities and all persons acting by, through, under, or in concert with any of these, his/her/its heirs, successors, representatives, assigns, attorneys, agents, executors and administrators, and each such Releasees' immediate family members as well as each of their respective predecessors, successors and assigns.

2.  **No Admission of Wrongdoing.** This Agreement and compliance with it shall not be construed as an admission by the Releasees of any liability whatsoever, any violation of any statute, law, ordinance, regulation, rule, duty, contract, right, or order, or that the Releasees are subject to any particular statute, law, ordinance, regulation, rule, duty, contract, right, or order. Releasees deny any violation of any statute, duty, contract, right, or order or that the Releasees are subject to any particular statute, law, ordinance, regulation, rule, duty, contract, right, or order. This Agreement shall not be construed as an admission by Plaintiff that Plaintiff's claims lack merit.

3.  **Cessation of Employment.**

   3.1   Releasor employment ceased effective prior to the commencement of this litigation.

   3.2   The Parties waive notice requirements, if any, relating to the conclusion of Releasor's employment.

3.3     Anything in any express or implied agreement to the contrary notwithstanding, all agreements between or among the Parties were terminated.

3.4     Aams agrees that she has already returned any property of the Releasees in her possession, custody or control, including for example any and all passwords and access codes to Releasees email addresses, computers, facilities, and rooms, uniforms, keys, equipment, supplies, documents, tools, keys, manuals, files, work completion reports, computer media or business records (including without limitation computer and other data relating to Releasees), any stored electronic data relating to Releasees, in Adams' custody or control, once copied and given to Releasees and/or, shall be securely deleted from all other storage belonging to or within control of Adams. If Releasees or the Releasees contend there is property belonging to them which is still in Adams' possession, they shall identify same in writing to Releasor attorneys on or before June 30,, 2022 so that the Parties can assess whether or not Adams is still in possession of same.

**4.     Separation Sum; No Other Payments.**

4.1     In consideration for the promises made by Adams in this Agreement, if Adams complies with the terms of this Agreement, does not revoke it, and is not in material breach of any terms of this Agreement, the Defendants will pay or cause to be paid to Adams the amount of $85,000.00, less usual payroll taxes and withholdings to her portion of the settlement related to wages/overtime (the "Settlement Payment") in accordance with the schedule outline in Paragraph 4.3.

4.2     ByDesign shall deliver the Checks as defined under Paragraph 4.3 to Wyatt and Associates, PLLC within fourteen days (14) days after full execution of same by Adams, and approval of this Agreement pursuant to any Cheeks v. Freeport Pancake House Motion (whichever is later) provided Counsel for Releasees receives from Counsel for Releasor: (i) two (2) signed originals of this Agreement and completed IRS Forms W-4 and W-9 for Adams; (ii) a completed IRS Form W-9 from Wyatt and Associates, PLLC; and (iii)_a signed Stipulation of Dismissal, with prejudice, signed by Releasor and/or her Counsel sufficient to effectuate dismissal of the entire Lawsuit, with prejudice (which will be held in escrow until the final settlement payment is remitted to Plaintiff's Counsel).

4.3     The payment shall be made payable as follows:

On the 8th day following approval of this Agreement by the Court:  (1) One check payable to Adams in the amount of $5,000, which shall represent payment for alleged overtime wages and thus is subject to applicable tax deductions and withholdings, and for which an IRS Form W-2 shall be issued; (2) One check payable to Adams in the amount of $51,666.67, which shall represent liquidated damages for Adams' wage claim as well as her damages for any Federal and/or New York State/City allegations of discrimination, and any interest allegedly owed (i.e. non-wage damages), and for which an IRS Form 1099 shall be issued; and (3) One Check payable to Wyatt and Associates, PLLC in the amount of $28,333.33, which

shall represent payment of Plaintiff's attorneys' fees and costs and for which an IRS Form 1099 shall be issued. (the "Checks").

4.4     Except such payments that may become required by this Paragraph 4, no wages, benefits, vacation pay, sick pay, or other payments or additional monies will be made by Defendants and/or the other Releasees to Releasor or on Releasor behalf.

4.5     The Parties agree that no wages, benefits, or other payments to Adams in connection with her employment is owing.

4.6     Upon receipt of the Payment, Releasor agrees to withdraw, with prejudice and without costs to any party, the pending U.S. District Court matter.

4.7     In the event any of the Defendants fails to make any payment on the payment due dates as set forth herein, Defendants shall be deemed to be in default. Defendants may cure said default within five (5) business days of written notice, sent via email and regular mail to the attention of Steven B. Horowitz, Esq., Horowitz Law Group, LLC, PO Box 13, Far Hills, NJ 07931, shorowitz@horowitzlawgroup.com. The five (5) day curing period shall begin on the date of mailing and transmission.

4.8.    Agreement to seek retention of jurisdiction by the District Court. - The Parties agree that they will jointly submit documentation to the District Court seeking a retention of jurisdiction until final payment is made. While the Parties have no control over the District Court's decision to retain jurisdiction, they agree to cooperate in submitting and setting forth all documentation to seek retention of jurisdiction such that the District Court may consider and issue a ruling on this request, including but not limited to, a statement in the Stipulation of Dismissal indicating that the Court shall retain jurisdiction to enforce the terms of the Agreement and seeking the Court "So Order" same.. This paragraph shall not be construed as a limitation on Plaintiff's rights under Paragraph 4.7 and 4.8 of this Agreement.

**5.     Adequacy of Consideration.** Adams understands and agrees that the sums that Defendants have agreed to pay under this Agreement are discretionary in nature, do not constitute an admission of liability, are not required of Releasees in the absence of this Agreement, constitute adequate and reasonable consideration for the Agreement, and constitute the entire amount of monetary consideration provided to her under this Agreement, that she is not entitled to any further monetary consideration whatsoever from Releasees, that she will assume payment of any and all attorneys' fees or costs that she has incurred in this Lawsuit, and that she will not seek any further compensation or consideration for any other claimed damages, costs, or attorneys' fees in connection with the matters encompassed in this Agreement or the Lawsuit, or any other events or circumstances that existed or occurred prior to his execution of this Agreement.

5.1     Adams further acknowledges and agrees that the Settlement Payment identified above fully compensates her for all damages that Defendants allegedly owe to her, claims that she expressly waives in consideration of the foregoing actions taken, or to be taken.

5.2     Adams further acknowledges that she would not otherwise be entitled to the Settlement Payment, but for her voluntary signing of this Agreement and commitment to its binding terms.

**6.     Taxation of Settlement Payment.** In the event that it is subsequently determined that Adams owes any taxes with respect to her respective payments set forth in Paragraph 4 above, as a result of her failure to comply with any tax law(s), rule(s) or regulation(s), Adams expressly acknowledges and agrees that she and/or her heirs, executors, administrators, agents, and assigns, and not Releasees (as that term is defined above), will be responsible for the payment of any such taxes, liabilities, payments, costs, interest and penalties. Adams agrees to indemnify and hold harmless Releasees to the full extent of any such taxes, liabilities, payments, costs, interest and penalties, which may be assessed in connection with any payment made to or on behalf of Adams hereunder caused by her failure to comply with any tax law(s), rule(s) or regulation(s).

**7.     Release.**

7.1     In consideration of Defendants undertakings contained in this Agreement, to which Adams is not otherwise entitled, to the greatest extent permitted under applicable law, Releasor, her respective family, heirs, executors, administrators, agents, attorneys, successors, representatives and assigns hereby irrevocably and unconditionally releases, acquits and forever discharges the Releasees from, or in respect of, any and all claims, charges, complaints, liabilities, obligations, suits, demands, promises, agreements, damages, costs, losses, debts and expenses, actions and expenses (including attorney's fees and costs) of any nature whatsoever, known or unknown, which relate to the Fair Labor Standards Act, Article 19 of the New York Labor Law Article Section 650 et seq. and the supporting New York State Department of Labor Regulations, 12 NYCRR Part 142, 2.2 ("New York Labor Law"), including but not limited to the provisions concerning Overtime, Spread of Hours Pay, and Failure to provide Notice of Pay Rate per New York Labor Law Section 195(1). This Release shall also include any and all causes of action for discrimination as alleged in Plaintiff's Complaint, and referred to in the third "WHEREAS" paragraph in this Agreement.

**8.     Limitations on the General Release.** For the avoidance of doubt, the Release in Paragraph 7, and the No Disparagement provisions in Paragraph 17 of this Agreement are limited by the following:

8.1     This Release does not release the Parties from obligations under this Agreement. Any Party may bring a claim for breach of this Agreement. If any Party brings any claim or action for breach of this Agreement or to enforce its respective rights under this Agreement, the prevailing Party shall be entitled to reasonable attorney's fees and costs that they incur in connection therewith.

8.2     The Release does not apply to claims for benefits under the New York Workers' Compensation Law or to any other claim that may not be waived and/or released by this Agreement under applicable law.

8.4     Nothing contained in this Agreement is intended to, or shall, interfere with Releasor's rights under federal, state, or local civil rights or employment discrimination laws (including, but not limited to, Title VII, the ADA, ADEA, GINA, USERRA, or their state or local counterparts) to file or otherwise institute a charge of discrimination, to participate in a proceeding with any appropriate federal, state, or local government agency enforcing discrimination laws, or to cooperate with any such agency in its investigation, none of which shall constitute a breach of this Agreement. Notwithstanding the foregoing, Releasor shall **not** be entitled to any relief, recovery, or monies in connection with any such complaint, charge or proceeding brought against any of the Releasees, regardless of who filed or initiated any such complaint, charge, or proceeding.

**9.      Remedies for a Breach of this Agreement.** If Releasor brings any claim covered in the Release, other than for a breach of this Agreement or to enforce her rights under this Agreement, to the greatest extent permitted by applicable law, Releasees shall be entitled to its and/or their reasonable attorney's fees and costs for defending against such a claim.

**10.     Medicare Eligibility and Enrollment and Satisfaction of any Medicare Reimbursement Obligations.**

10.1     Releasor represents and warrants that she has not received any medical services or items related to, arising from, or in connection with the Released Matters.

10.2     Releasor acknowledges and represents that Medicare has not paid for the medical items or services, if any, provided Releasor in connection with the Released Matters. Notwithstanding this representation, Releasor further acknowledges and agrees that it is her responsibility pursuant to this Agreement, and not the responsibility of the Releasees, to reimburse Medicare for any payments by Medicare on behalf Releasor.

**11.    Enforcement and Controlling Law.** This Agreement is made and entered into, and shall be subject to, governed by and interpreted in accordance with the laws of the state of New York and shall be fully enforceable in the courts of that state, without regard to principles of conflict of laws, and shall be interpreted as neutral as between the parties, without regard to any presumptions, inferences or rules of construction based on the authorship of the Agreement. In addition to any and all other available remedies for the breach of any provision of this Agreement (none of which are waived in or by this Agreement), any party shall have the right to seek specific enforcement of this Agreement, except as to provisions which subsequently may be held invalid or unenforceable.

11.1     Releasor acknowledges that this is a negotiated agreement and that no provision of this Agreement shall be construed against any party based upon the fact that a party or its attorney proposed or drafted the term or provision in dispute.

**12.     Completely Integrated Agreement.** This Agreement contains the full and complete understanding between the Parties hereto and supersedes all prior understandings, whether written or oral pertaining to the subject matter hereof. This Agreement may not be amended or modified

otherwise than by written agreement executed by both Adams, and by duly authorized representatives of Releasees.

**13.     Notices.** All notices and other communications related to this Agreement shall be in writing and shall be given by email or hand delivery to the other party or by registered or certified mail, return receipt requested, postage prepaid, or reputable overnight courier (such as Federal Express or UPS). Unless another address is provided to the other Party in writing, notice shall be given:

| **To: Releasor:** | **To Releasees:** |
| --- | --- |
| C/O Timothy Brock , Esq.<br>Wyatt and Associates, PLLC<br>63 Emerald St., PMB #603<br>Keene, NH 03431<br>tbrock@wyattlegalservices.com | Steven B. Horowitz, Esq.<br>**HOROWITZ LAW GROUP, LLC**<br>49 Route 202<br>P.O. Box 13<br>Far Hills, NJ 07931<br>shorowitz@horowitzlawgroup.com |

**14.     Savings Clause.** The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement.

**15.     Strict Compliance.** The failure of any Party to insist upon strict compliance with any provision of this Agreement, or the failure to assert any right any Party may have hereunder, shall not be deemed to be a waiver of such provision or right or any other provision or right of this Agreement.

**16.     Releasor Acknowledgements.** By signing this Agreement, Adams acknowledges that:

16.1    She has carefully read, or had read to her, and understands, this Agreement;

16.2    She was notified that she may take up to 21 days from receiving this Agreement to consider whether or not to sign this Agreement. Adams acknowledges that if she chooses to sign the Agreement prior to the expiration of this 21-day consideration period, she does so knowingly and voluntarily, and that Releasees have not asked her to shorten the time period for consideration of whether to sign this Agreement, nor have they threatened to withdraw or alter the payment due prior to the expiration of the 21-day consideration period or provided different terms to Adams because she choosess to sign the Agreement prior to the expiration of the 21-day consideration period.

16.3    She was notified that, within seven (7) calendar days following the date she executes this Agreement, Adams may revoke the Agreement. Any revocation during this period must be submitted in writing and delivered to Steven B. Horowitz, Esq., at shorowitz@horowitzlawgroup.com, or mailing same to Horowitz Law Group, LLC, P.O. Box 13, Far Hills, New Jersey, and postmarked within seven (7) calendar days of the revoking execution of this Agreement. If the last day of the revocation period is Sunday or

a legal holiday in the State of New Yok, then the revocation period shall not expire until the next following day which is not a Sunday or a legal holiday.

16.4  Discussion or negotiation over the terms of this Agreement shall not extend the twenty-one (21) calendar day period described in Paragraph 19.2 unless that period is expressly extended in a writing signed by all Releasees;

16.5  This Agreement shall not become effective or enforceable until this seven-calendar day revocation period has expired without Releasor having timely exercised her right to revoke in accordance with Paragraph 16.3.

16.6  She has been given a reasonable time to consider her rights and obligations under this Agreement;

16.7  She was advised to consult with an attorney of her choice and she has consulted with an attorney in connection with the execution and delivery of this Agreement, or have had an opportunity to so consult and has knowingly chosen not to do so;

16.8  She understands that this Agreement is legally binding and by signing it she gives up certain rights;

16.9  She has knowingly and voluntarily chosen to enter into this Agreement and has not been forced or pressured in any way to sign it;

16.10  She has not relied upon any representation, statement or omission made by any Releasee, or any Releasee's agents, attorneys or representatives with regard to the subject matter, basis or effect of this Agreement or otherwise, other than those expressly stated in this Agreement; and

16.11  She has been paid for all work performed for the Releasees.

**17.  Headings.** The headings are provided for the convenience of the Parties only and are not part of this Agreement and shall not be deemed in any manner to modify, explain, expand, or restrict any of the provisions of this Agreement.

**18.  Execution/Counterparts.** This Agreement may be executed electronically and/or in counterpart by each party. Facsimile, PDF or other electronic counterparts will be considered one and the same instrument, and each executed Agreement, when taken together, shall constitute a complete Agreement. This Agreement may not be modified, altered or changed except in writing and signed by all Parties wherein specific reference is made to this Agreement.

REMAINDER OF PAGE INTENTIONALLY BLANK

To signify agreement to the terms of this Agreement, the Parties have executed this Agreement on the date set forth below her signatures, which appear below.

**I HEREBY ACKNOWLEDGE THAT I HAVE READ THIS AGREEMENT, THAT I FULLY KNOW, UNDERSTAND AND APPRECIATE ITS CONTENTS, SUCH AS THE GENERAL RELEASE OF ALL CLAIMS, AND THAT I HEREBY ENTER INTO THIS AGREEMENT VOLUNTARILY AND OF MY OWN FREE WILL.**

**CLAUDIA ADAMS:**

_[signature]_
Claudia Adams

STATE OF New York )
                  ) ss:
COUNTY OF Nassau  )

On the 7th day of October, 2022, before me, the undersigned, personally appeared Claudia Adams, personally known to me or proved to me on the basis of satisfactory evidence, to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her individual capacity, and that by her signature on the instrument, the individual, or the person upon behalf of whom the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in Glen Head, New York.

_[signature]_
NOTARY PUBLIC

_[Notary seal: KATHRYN J. BIFULCO, NOTARY PUBLIC, STATE OF NEW YORK, NO. 01BI6320180, QUALIFIED IN NASSAU COUNTY, COMM. EXP 03-02-2023]_

**JAY LEE:**

_____
Jay Lee
DATED: _____

**RUSSELL KEMP:**

_____
Russell Kemp
DATED: _____

To signify agreement to the terms of this Agreement, the Parties have executed this Agreement on the date set forth below her signatures, which appear below.

**I HEREBY ACKNOWLEDGE THAT I HAVE READ THIS AGREEMENT, THAT I FULLY KNOW, UNDERSTAND AND APPRECIATE ITS CONTENTS, SUCH AS THE GENERAL RELEASE OF ALL CLAIMS, AND THAT I HEREBY ENTER INTO THIS AGREEMENT VOLUNTARILY AND OF MY OWN FREE WILL.**

**CLAUDIA ADAMS:**

_____
Claudia Adams

STATE OF _____ )
                          ) ss:
COUNTY OF _____ )

On the _____ day of _____, 2022, before me, the undersigned, personally appeared Claudia Adams, personally known to me or proved to me on the basis of satisfactory evidence, to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her individual capacity, and that by her signature on the instrument, the individual, or the person upon behalf of whom the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in _____, New York.

_____
NOTARY PUBLIC

**JAY LEE:**

_/s/ Jay Lee_____
Jay Lee
DATED: 9/26/2022

**RUSSELL KEMP:**

_/s/ Russell Kemp_____
Russell Kemp
DATED: 9-27-2022

Page 9 of 10

**BYDESIGN, LLC:**

_____
On Behalf of ByDesign, LLC.
DATED: 9/26/2022