UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                              :

CLAUDIA ADAMS,                        :
                                              :
                        Plaintiff,    :
                                            :                21-CV-6157 (VSB)
                - against -         :
                                            :              **OPINION & ORDER**
BY DESIGN LLC, *et al.*,        :
                                            :
                      Defendants.  :
                                            :
--------------------------------------------------------X

<u>Appearances</u>:

Timothy J. Brock
Trevor Brice
Law Offices of Wyatt & Associates PLLC
Keene, New Hampshire
*Counsel for Plaintiff*

Steven B. Horowitz
Horowitz Law Group, LLC
Far Hills, New Jersey
*Counsel for Defendants*

<u>VERNON S. BRODERICK, United States District Judge</u>:

        Before me is the parties' third settlement agreement in action involving claims brought

under the Fair Labor Standards Act ("FLSA").  (*See* Doc. 18 ("Agreement").)  Parties may not

privately settle FLSA claims absent the approval of the district court or the Department of Labor.

*Samake v. Thunder Lube, Inc.*, 24 F.4th 804, 807, 810 (2d Cir. 2022) (citing *Cheeks v. Freeport

Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015)).  In the absence of Department of Labor

approval, the parties must satisfy this Court that their settlement is "fair and reasonable."

*Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015) (internal quotation marks

omitted).

Upon review of the parties' materials and for the reasons stated below, I find that the settlement of the parties is fair and reasonable, and therefore it is APPROVED.

## I.  **Background**

On July 19, 2021, Plaintiff Claudia Adams filed this action against her employer, Defendant By Design, LLC, and By Design's co-owners, Defendants Jay Lee and Russell Kemp (collectively, "Defendants").  (*See* Doc. 1 ¶¶ 1–4.)  The complaint alleges that Defendants discriminated against Plaintiff based on her pregnancy and gestational diabetes, eventually terminating her because she requested reasonable accommodations for these conditions.  (*Id*. ¶¶ 9–54.)  Plaintiff asserted claims for sex discrimination, pregnancy discrimination, disability discrimination, and retaliation under Title VII, the Americans with Disabilities Act, and New York's statutory analogues.  (*Id*. ¶¶ 55–186.)  Plaintiff also asserted an unpaid-overtime claim under the FLSA, and a parallel claim under New York law.  (*Id*. ¶¶ 187–219.)

The parties agreed to settle the case following a Court-ordered mediation on December 9, 2021.  (*See* Doc. 8.)  I have twice denied the parties' proposed settlement agreements, first on June 3, 2022 because the proposed agreement contained a clause denying Plaintiff the ability to work for Defendants in the future, (*see* Doc. 14), and second on September 20, 2022 because the proposed agreement contained overbroad non-disparagement and non-communication provisions, (*see* Doc. 17).

On October 13, 2022, the parties filed a third proposed settlement agreement for my review, (Doc. 18 ("Agreement"), and a joint letter explaining why the settlement was fair and reasonable, (Doc. 19 ("First Ltr.")).  Because the Agreement contained an attorneys'-fees provision, I requested that the parties submit factual support for the fees requested.  (*See* Doc. 20.)  Thereafter, on June 20, 2023, the parties submitted a letter purporting to support the fee request.  (Doc. 21.)  On October 22, 2024, I ordered the parties to submit additional factual

support, as the materials the parties provided were incomplete and insufficient.  (*See* Doc. 23.)
On November 6, 2024, the parties submitted a second joint letter in support of the fee request
and of settlement approval in general, (Doc. 24 ("Second Ltr.")), attaching Plaintiff's counsel's
billing records on the case, (*id*. at 13–16).

## II.    <u>Legal Standard</u>

To determine whether a settlement is fair and reasonable under the FLSA, I "consider the
totality of circumstances, including but not limited to the following factors:  (1) the plaintiff's
range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid
anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the
seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is
the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of
fraud or collusion."  *Beckert v. Rubinov*, No. 15-CV-1951, 2015 WL 6503832, at *1 (S.D.N.Y.
Oct. 27, 2015) (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)).

"In addition, if attorneys' fees and costs are provided for in the settlement, district courts
will also evaluate the reasonableness of the fees and costs."  *Fisher v. SD Prot. Inc*., 948 F.3d
593, 600 (2d Cir. 2020).  In requesting attorneys' fees and costs, "[t]he fee applicant must submit
adequate documentation supporting the [request]."  *Id.*  The Second Circuit has described a
presumptively reasonable fee as one "'that is sufficient to induce a capable attorney to undertake
the representation of a meritorious civil rights case.'"  *Restivo v. Hessemann*, 846 F.3d 547, 589
(2d Cir. 2017) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010)).  A fee may
not be reduced "'merely because the fee would be disproportionate to the financial interest at
stake in the litigation.'"  *Fisher*, 948 F.3d at 602 (quoting *Kassim v. City of Schenectady*, 415
F.3d 246, 252 (2d Cir. 2005)).

### III.    <u>Discussion</u>

I have independently reviewed the Agreement and the supporting evidence in order to determine whether the terms of the Agreement are fair, reasonable, and adequate.  I believe that they are and therefore approve the Agreement of the parties.

### A.    *Settlement Agreement*

The Agreement provides for a total settlement amount of $85,000, comprising $5,000 for unpaid overtime; $51,666.67 for Plaintiff's discrimination claims as well as liquidated damages on her wage-and-hour claims; and $28,333.33 for attorneys' fees.  (Agreement ¶ 4.3; *see also* Settlement Ltr. at 2.)  The parties submit that the thrust of Plaintiff's case relates to her pregnancy-discrimination and retaliation claims, in compensation for which she sought $104,629.  (Second Ltr. at 1–2.)  By contrast, on her FLSA claim, Plaintiff alleges that she was owed approximately $5,000 in unpaid overtime.  (First Ltr. at 3; Second Ltr. at 4.)

I find that this settlement amount is fair and reasonable in the context of this case.  To assess the fairness of the settlement amount, courts in this Circuit compare the settlement amount to the plaintiff's "maximum possible recovery" had the plaintiff prevailed at trial.  *Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, 538 F. Supp. 3d 310, 316, 322 (S.D.N.Y. 2021).  When a proposed settlement agreement resolves both FLSA and non-FLSA claims, as here, I need only evaluate whether the FLSA portion of the settlement is fair and reasonable.  *See Lopez v. Ploy Dee, Inc.*, No. 15-CV-647, 2016 WL 3637103, at *2 (S.D.N.Y. June 29, 2016) (citing *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187, 2015 WL 7871036, at *2 (S.D.N.Y. Dec. 3, 2015)).

Here, the maximum potential recovery on Plaintiff's FLSA unpaid overtime claim is $10,000, which comprises $5,000 in compensatory damages and $5,000 in liquidated damages.  *See* 29 U.S.C. § 216(b) (providing for compensatory damages of the plaintiff's "unpaid overtime

compensation" and "an additional equal amount as liquidated damages").  The undifferentiated sum of $51,666.67 is meant to include both liquidated FLSA damages and compensatory damages for Plaintiff's discrimination claims.  Thus, the settlement amount for Plaintiff's FLSA claim is at least 50% of the total potential recovery.  Courts regularly approve FLSA settlement amounts that represent smaller proportions of the total potential recovery.  *See, e.g.*, *Santos v. YMY Mgmt. Corp.*, No. 20-CV-1992, 2021 WL 431451, at *1 (S.D.N.Y. Feb. 8, 2021) (approving settlement amount of 39% of the plaintiff's total potential recovery, and collecting cases approving settlements between 12.5% and 43% of the plaintiff's total potential recovery).

Further, the remaining provisions of the Agreement suggest that it is fair and reasonable. The parties have removed the overbroad non-employment, non-communication, and non-disparagement provisions which caused me to reject the prior two settlements.  (*See* Doc. 14 at 3; Doc. 17 at 2–3.)  Although the Agreement's release provision encompasses more than Plaintiff's unpaid-overtime claim, (Agreement § 7), I do not find that it is impermissibly overbroad, because Plaintiff settled both FLSA and non-FLSA claims.  *See Gaspar*, 2015 WL 7871036, at *2 (explaining that an agreement may contain a release of non-FLSA claims when the release is given in exchange for settling both FLSA claims and non-FLSA claims "that happen[] to be settled in the same agreement").

Other features of the Agreement suggest that the settlement amount is fair and reasonable. The parties achieved a settlement relatively early in the litigation before a court-appointed mediator, suggesting that the parties settled in good faith through an arm's-length negotiation. *See Diaz v. Scores Holding Co.*, No. 07-CV-8718, 2011 WL 6399468, at *2 (S.D.N.Y. July 11, 2011) ("In FLSA settlements . . . arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement achieved is procedurally fair, reasonable, adequate, and

not a product of collusion." (citing *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005))).  Additionally, the parties represent that "Plaintiff did not maintain records of her claimed off-the-clock time," and would likely be unable to call witnesses to support her unpaid-overtime claim at trial.  (First Ltr. at 3.)  Thus, by reaching the Agreement, Plaintiff avoids potentially significant litigation risk.  Finally, there is no basis for me to believe that there was any fraud or collusion involved in the settlement.

Thus, based on the representations of the parties and my own analysis of the totality of the circumstances present here, I find that the Agreement appears to be a fair and reasonable resolution of this dispute.

### B.    Attorneys' Fees

As the settlement includes a provision for attorneys' fees, I must "evaluate the reasonableness of the fees and costs" requested.  *Fisher*, 948 F.3d at 600.  The Agreement provides that Plaintiff's attorneys will receive $28,333.33.  (Agreement § 4.3.)  This represents precisely one-third of the total settlement amount, which the parties explain reflects Plaintiff's contingency arrangement with her attorneys.  (Second Ltr. at 2.)  As I previously explained, however, (*see* Doc. 23 at 2), I still must evaluate the reasonableness of the fee request under the percentage-of-fund method and the lodestar method.  *See, e.g.*, *Rubio v. BSDB Mgmt., Inc.*, 548 F. Supp. 3d 362, 367–68 (S.D.N.Y. 2021); *Hernandez v. Boucherie LLC*, No. 18-CV-7887, 2019 WL 3765750, at *4 (S.D.N.Y. Aug. 8, 2019).

In response to my October 22, 2024 Order, Plaintiff's counsel submitted its billing records in this case.  (Second Ltr. at 13–16.)  The records document that Plaintiff's attorneys spent a total of 47.1 hours on this case:  10.8 attorney hours at $495 per hour; 28.5 attorney hours at $395 per hour; 5.5 attorney hours at $175 per hour; and 2.3 paralegal hours at $175 per hour.  (*Id.*)  This figures to a total of $17,968.50.  The attorneys and paralegals spent time on at least the

following: prelitigation investigation and communication with Defendants, developing the case strategy, drafting the operative pleading, drafting discovery requests, and finally negotiating and executing the settlement before the court-appointed mediator. (*Id.*)

I find that the fee award in the Agreement is reasonable. Awards representing one-third of the plaintiff's total recovery are routinely approved in this District. *Pinzon v. Jony Food Corp.*, No. 18-CV-105, 2018 WL 2371737, at *3 (S.D.N.Y. May 24, 2018) ("[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases." (quoting *Meza v. 317 Amsterdam Corp.*, No. 14-CV-9007, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015)). The billing rates and hours worked similarly fall within the range of permissible FLSA fee awards. *Alvarez v. Fine Craftsman Grp., LLC*, No. 20-CV-10452, 2024 WL 3730569, at *3 (S.D.N.Y. Aug. 6, 2024) (collecting cases and noting that "[c]ourts in this district have approved hourly rates for partners of $600 per hour in FLSA and NYLL suits"). Although counsel seeks a fee award that is larger than the lodestar amount—specifically, 1.58 times the lodestar amount—I find that this "modest multiplier . . . is reasonable to account for the risk inherent in bringing any FLSA action on contingency." *Briggs v. DPV Transportation, Inc.*, No. 21-CV-6738, 2021 WL 6111917, at *6 (S.D.N.Y. Dec. 27, 2021) (approving multiplier of 1.59); *see also id.* (citing *Robles v. Luis Furniture #1 Inc.*, No. 20-CV-6951, 2021 WL 4974677, at *2 (S.D.N.Y. Oct. 26, 2021); *Lazo v. Kim's Nails at York Ave., Inc.*, No. 17-CV-3302, 2019 WL 95638, at *3 (S.D.N.Y. Jan. 2, 2019)).

Based on this analysis, I find the Agreement's fee award to be fair and reasonable.

### IV.    <u>Conclusion</u>

For the foregoing reasons, I find the Agreement, including the fee provision, to be fair and reasonable.  Accordingly, the Agreement is APPROVED.

The Clerk of Court is respectfully directed to terminate this action.

SO ORDERED.

Dated: December 31, 2024
      New York, New York

Vernon S. Broderick
United States District Judge